Charles M. Leftwich, Jr. (018465)
LAW COUNSEL, LLC
2345 East University Dr. Suite 2
Mesa, Arizona 85213
(480) 925-0500 office
(602) 349-0925 cell

Charles.leftwich@gmail.com

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

In re:

**GLADYS JAHN**

    Debtor

Chapter 13 Proceedings

2:23-BK-01702-MCW

**DECLARATIONS TO EXTEND/EFFECTUATE STAY - PRELIMINARY HEARING**

Pursuant to this Honorable Court's Rule 9.4 Declarations to Extend/Effectuate Stay dictates that such motions should be supported by written declaration setting forth clear and convincing evidence sufficient to rebut any presumption that the case was <u>not</u> filed in good faith. In Judge Madeleine C. Wanslee's Order Imposing Temporary Stay dated April 19, 2023, the Debtor will follow the pattern followed by some courts in considering a list of factors to assist the Court in reaching a conclusion that the instant Chapter 13 was filed in good faith.

## I. THE TIMING OF THE PETITION

The petition arose from the dismissal of the first bankruptcy and was necessary the stop the pending trustee sale.

## II. HOW THE DEBT AROSE

The Debtor had purchased the house located at 2625 E. JJ Ranch Rd. Phoenix, AZ 85024 right before the market crash of 2008. While she had paid her principal down to $280,000, she was unable to stay current on her house because of a serious auto accident that left her injured and unable to work for an extensive period of time (approximately a year). At the time, she attempted to secure a temporary loan modification that required her to successfully completed the trial payments. However,

the lender LS9 Atlantis Holdings, LLC ("Victra" or its predecessor in interest) added $250,000 in hitherto undisclosed fees on to the home. While the lender (subsequent purchaser) LS9 conceded that the Debtor had reduced the principal payment down to only $280,000.00, it would not negotiate away the $150,000 additional fee imposed. The lender did reduce the fee by $100,000 but sent the Debtor an IRS tax form 1099 for the imputed income due to the forgiveness of the debt. The Debtor did not receive satisfactory answers as to why the $250.000.00 fee had been added to the loan. Put another way, a mysterious $250,000.00 was placed on her account, but the lender reduced said amount to $150,000.00 and sent her a 1099 for the difference. She hired an attorney and a law suit commenced to negotiate more favorable terms of repayment.

The LSF9 Atlantis Holdings, LLC (Victra bought a pool (group) of homes that were in either in forbearance or pre-foreclosure for $0.67 on the dollar. The Debtor opines that her loan modification never materialized because LSF9 were really waiting for these pools of homes to be judicially foreclosed upon. Even though the debtor made payments along the way through each trail period she never received a permanent loan modification.

### III. THE DEBTOR'S MOTIVE

The Debtor avows the current chapter 13 is a viable plan and that it is feasible considering the current income stream of the bakery. While the current plan payment is higher than the last bankruptcy, she is earmarking $1,500.00 a week and putting it towards the total monthly chapter 13 plan payment. Furthermore, the Debtor was able to secure a potential financial venture with a legal dispensary that on paper would allow her to pay her Chapter 13 plan payment. Therefore, given that her financial situation will substantially change positively as the result of the new joint venture coupled. The Debtor indicates that two (2) monthly payments of $5,700.00 will be paid by the time of the hearing as demonstrative proof of her serious and pure motive.

## IV. HOW THE DEBTOR'S ACTIONS AFFECTED CREDITORS

Apparently, the lender has added $20,000.00 in fees since the last statement it provided to the Debtor. And the lender instructed Fay Servicing scheduled another trustee sale.

## V. WHY THE DEBTOR'S CASE WAS DISMISSED

Debtor's previous Chapter 13 was dismissed for failure to make plan payments. The Debtor took a risky financial gamble on servicing as a vendor for her husband's bakery the recent National Football League (NFL) Superbowl. Unfortunately, the endeavor resulted in a financial bust. Debtor had miscalculated her financial obligations and did not sufficiently prioritize her Chapter 13 plan payment budget requirements. She had hoped to make enough during the Superbowl to get current.

## VI. THE LIKELIHOOD THAT THE DEBTOR WILL HAVE STEADY INCOME THROUGHOUT THE CASE AND WILL BE ABLE TO FUND A PLAN

There has been a substantial change in the Debtor circumstances since the dismissal of the prior case. The Debtor was able to secure a potential financial venture with a legal dispensary that on paper would allow her to pay her Chapter 13 plan payment. Therefore, given that her financial situation has substantially change positively as the result of the new joint venture coupled with her making her Chapter 13 plan payment is sufficient grounds as to why the automatic stay should not be not be lifted.

## VII. WHETHER ANY PARTY OBJECTS TO THE MOTION

The Debtors' prior Chapter 13 case was not dismissed at a time when there had been a motion for relief that was pending before the court or resolved with an order terminating, conditioning or limiting the stay. Furthermore, no affirmative action was taken against the Debtor from the date of the dismissal of the first case until the date of the filing of this case.

Respectfully Submitted,

DATE: April 23, 2023

By *Charles M. Leftwich*
Charles M. Leftwich, Esq.